UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

METROPOLITAN LIFE INSURANCE CO.,
a foreign insurer,

      Plaintiff-In-Interpleader,

         v.

ROXANN CLINE, a single woman;
TERESA E. VALENTINE, individually
and as guardian for B.R.C.,
J.W.C., and B.M.C., minor
children,

      Defendants-In-Interpleader.

No.   CV-05-3104-FVS

ORDER

TERESA E. VALENTINE, individually
and a guardian for B.R.C.,
J.W.C., and B.M.C., minor
children,

      Third Party Plaintiffs,

         v.

FIDELITY EMPLOYERS SERVICES CO.,
LLC,

      Third Party Defendant.

     **THIS MATTER** comes before the Court pursuant to Federal Rule of

Civil Procedure 12(b).  Fidelity Employer Services Company, LLC, moves

to dismiss Teresa Valentine's third-party claim without prejudice for

failure to exhaust administrative remedies.  Teresa Valentine is

represented by Sarah L. Wixon.  Fidelity Employer Services Company,

LLC, is represented by Thomas W. McLane.

ORDER - 1

**BACKGROUND**

Raymond Cline was married to Teresa Valentine until September 26, 2002.  On that date, a Decree of Dissolution was entered in state Superior Court.  Afterward, Mr. Cline married Roxann Cline.  Their marriage lasted until December 15, 2004, when he died.  Prior to his death, Mr. Cline was employed by BP Corporation North America, Inc. ("BP").  He had an interest in the BP Employee Savings Plan ("the Plan").  While the plan is administered by BP, Fidelity Employer Services Company, LLC, and its affiliates ("Fidelity") provide record-keeping and administrative services.  After Mr. Cline's death, someone distributed the assets in his account to his widow.  During August of 2005, Mr. Cline's former wife (Teresa Valentine) submitted a copy of the Decree to Fidelity through her attorney.  The Decree was referred to "QDRO Services," which responded to Ms. Valentine's attorney in a letter dated September 20, 2005.  The letter states in part:

> **Please be advised that Fidelity has no record of ever receiving the . . . Decree of Dissolution prior to your letter.**
>
> **According to our records, the Participant was eligible to be in the . . . Plan(s) but our records indicate that there are no assets/benefits in the account(s) to segregate. Therefore, as there are no assets to be awarded to the Alternate Payee, there will be no review of this order.**
>
> We consider this matter closed.

(Emphasis in original.)  Counsel for Teresa Valentine wrote to

ORDER - 2

Fidelity on November 23, 2005.  He said that, whether or not Fidelity and BP had received a copy of the Decree prior to the distribution of assets, they were on notice of the dissolution and remarriage.  Thus, in his opinion, they had a duty to investigate Mr. Cline's marital history.  On January 13, 2006, Sharon Wheeler responded on behalf of Fidelity.  She, too, insisted that neither Fidelity nor BP had received a copy of the Decree prior to August of 2005.  Nevertheless, she went on to say:

> Please be advised that even if the Decree of Dissolution had been timely submitted to the Plans as alleged, it does not meet the requirements for qualification under ERISA, the Code and the QDRO Approval Guidelines and Procedures for the Plans ("QDRO Guidelines").  Pursuant to the provisions of these federal statutes and the QDRO Guidelines, a domestic relations order must contain certain information to effect an assignment to an alternate payee of a participant's qualified retirement plans.  Because the Decree of Dissolution fails to qualify as a qualified domestic relations order, the Plans cannot comply with its terms. Finally, it should be noted that by its terms, Exhibit 2 of the Decree of Dissolution does not create any interest in the Pension Plan for your client, Ms. Valentine.

> If you or your client possesses any relevant documentation, please submit it to the Administrator of the Plans. Additionally, please be advised that under ERISA's claims appeal process, your client may submit a written request to the Administrator of the Plans.  Please send such correspondence to:  . . .  Otherwise, we will consider this matter closed.

(Letter of Sharon Wheeler dated January 13, 2006, at 1-2.)  Ms. Valentine did not seek administrative review.  Instead, on March 16,

ORDER - 3

2006, she filed a third-party claim against Fidelity under the

Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C.

§§ 1001 *et seq*.  Fidelity moves to dismiss her third-party claim

without prejudice under Rule 12(b) on the ground she failed to exhaust

her administrative remedies.

**RULING**

A. Rule 12(b) Motion Is Proper

Ms. Valentine argues that the Court cannot resolve Fidelity's

motion without looking beyond the pleadings and that the Court may

look beyond the pleadings only if it converts Fidelity's Rule 12(b)

motion to a summary judgment motion.  While this is the general rule,

there are exceptions.  "[T]he failure to exhaust nonjudicial remedies

that are not jurisdictional should be treated as a matter in

abatement, which is subject to an unenumerated Rule 12(b) motion

rather than a motion for summary judgment."  *Wyatt v. Terhune*, 315

F.3d 1108, 1119 (9th Cir.2003) (citations omitted), *cert. denied sub

nom. Alameida v. Wyatt*, 540 U.S. 810, 124 S.Ct. 50, 157 L.Ed.2d 23

(2003).  The Court may look beyond the pleadings.  *Id.* at 119-20.

B. Ms. Valentine Is Asserting A "Contractual" Claim

Courts distinguish between an ERISA claim that is based upon a

benefit plan and an ERISA claim that is based upon § 510, 29 U.S.C. §

1140.  The former is typically referred to as a "contractual" claim;

the latter is typically referred to as a "statutory" claim.  *See,*

ORDER - 4

*e.g., Madera v. Marsh USA, Inc.*, 426 F.3d 56, 63 (1st Cir.2005). Ordinarily, a plaintiff must exhaust his administrative remedies before commencing a contractual claim. *Amato v. Bernard*, 618 F.2d 559, 568 (9th Cir.1980). Ordinarily, he need not exhaust his administrative remedies before commencing a statutory claim. *Amaro v. Continental Can Co.*, 724 F.2d 747, 752 (9th Cir.1984). Ms. Valentine characterizes her claim as a statutory claim rather than a contractual claim. Her characterization of her claim is not supported by the record. As Fidelity points out, she is alleging that she was wrongfully denied benefits to which she is entitled under her ex-husband's plan. "A claim for the wrongful denial of benefits . . . is not to be treated as a 'statutory' claim, but rather as a 'contractual' one." *Madera*, 426 F.3d at 63. Consequently, Ms. Valentine must demonstrate that she has exhausted her administrative remedies unless it would have been futile for her to attempt to do so. *Amato*, 618 F.2d at 568.

        C. Plan Requires Exhaustion of Administrative Remedies

        Ms. Valentine alleges that the plan does not include a provision requiring her to exhaust her administrative remedies. Absent such a provision, she argues, she is not required to do so. In response to this argument, Fidelity has submitted additional sections of the plan. One of them states in part, "You can file suit only after you have exhausted the plan's claims and appeals procedures." (Supplemental

ORDER - 5

Declaration of Clifford York (Ct. Rec. 76), Ex. A-1, at N-19.)  In view of this provision, exhaustion is mandatory.

D. Exhaustion Of Administrative Remedies Would Not Have Been Futile

Ms. Valentine argues that exhaustion would have been futile.  As she observes, someone distributed the assets in her ex-husband's account before August of 2005.  Furthermore, both the plan administrator and Fidelity denied receiving a copy of the Decree before August of 2005, and Fidelity denied that the Decree was a Qualified Domestic Relations Order.  Although these allegations are undisputed, Ms. Valentine has failed to establish that exhaustion would have been futile.  Had she appealed, the BP claims and appeals coordinator could have determined whether BP or Fidelity actually received a copy of the Decree before August of 2005 and whether the Decree was a Qualified Domestic Relations Order ("QDRO").

E. Equitable Estoppel Inapplicable

In its letter of September 20, 2005, Fidelity stated, in part, "We consider the matter closed."  Ms. Valentine argues that this statement clearly indicated Fidelity's decision was final and there was no point in seeking administrative review.  Had this been Fidelity's last communication to Ms. Valentine's attorney, Fidelity might be equitably estopped from asserting her failure to exhaust administrative remedies as an affirmative defense.  *Cf. Paese v.*

ORDER - 6

*Hartford Life & Accident Ins. Co.*, 449 F.3d 435, 448 (2d Cir.2006)

(beneficiary properly invoked doctrine of equitable estoppel where

insurance company wrote, "'*our claim decision is now final as you have*

*exhausted any administrative remedies available* to you under the

policy'" (emphasis added by Second Circuit)).  However, Fidelity's

letter of September 20th was not its final communication to Ms.

Valentine's attorney.  On January 13, 2006, Ms. Wheeler wrote,

"[P]lease be advised that under ERISA's claims appeal process, your

client may submit a written request to the Administrator of the

Plans."  Given this statement, Ms. Valentine cannot establish (as she

must) that she waived her administrative remedies because she was

misled into thinking that none were available.

　　　**IT IS HEREBY ORDERED:**

　　　1. Fidelity's motion to dismiss (**Ct. Rec. 47**) is granted.

　　　2. The third-party ERISA claim that Teresa Valentine brought

against Fidelity Employer Services Company, LLC, on her behalf and the

behalf of her children is dismissed without prejudice for failure to

exhaust administrative remedies.

　　　**IT IS SO ORDERED.**  The District Court Executive is hereby

directed to enter this order and furnish copies to counsel.

　　　**DATED** this ___24th___ day of May, 2007.

　　　　　　　　　　　　　____s/ Fred Van Sickle____
　　　　　　　　　　　　　　　Fred Van Sickle
　　　　　　　　　　　　United States District Judge

ORDER - 7