UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

METROPOLITAN LIFE INSURANCE
COMPANY, a foreign insurer,

      Plaintiff-In-Interpleader,


           v.

ROXANN CLINE, a single woman;
TERESA E. VALENTINE, individually
and as guardian for B.R.C.,
J.W.C., and B.M.C., minor
children,

      Defendants-In-Interpleader.

TERESA E. VALENTINE, individually
and a guardian for B.R.C.,
J.W.C., and B.M.C., minor
children,

      Third Party Plaintiffs,


           v.

FIDELITY EMPLOYER'S SERVICES,
CO., LLC,

      Third Party Defendant.

No. CV-05-3104-FVS

ORDER ON SUMMARY JUDGMENT

    **THIS MATTER** comes before the Court on cross motions for summary judgment.  Teresa E. Valentine is represented by James S. Elliot. Roxann Cline is represented by William J. Schroeder.

    **BACKGROUND**

ORDER ON SUMMARY JUDGMENT- 1

This is an interpleader action originally filed by Metropolitan Life Insurance Company ("MetLife") in order to resolve competing claims to MetLife's Group Universal Life Insurance Policy No. 95520 ("the Policy"). Having found MetLife to be a disinterested stakeholder, the Court dismissed MetLife from the action on May 2, 2006. (Ct. Rec. 27.) The remaining parties, Teresa Valentine and Roxann Cline, assert competing claims to both the Policy and the benefits of a 401K maintained by Raymond E. Cline.

Teresa Valentine was married to Raymond Cline for approximately 18 years. Declaration of Teresa E. Valentine, January 7, 2007 ("Valentine Decl.") ¶ 2. On March 6, 2000, Raymond enrolled in the Policy, a Group Universal Life Insurance Plan offered by his employer, British Petroleum/Amoco Corporation ("BP"). Declaration of Roxann Cline, January 3, 2007 ("Cline Decl.") ¶ 3. Raymond selected coverage for himself in the amount of $432,000. Raymond's Beneficiary Designation lists Ms. Valentine as the sole beneficiary of the Policy and indicates that she is "Entitled to 100% of benefits or $432,000." Statement of Material Facts in Supp. of Def.-In-Interpleader Roxann Cline's Mot. For Summ. J. ("Cline SOF") Ex. 3. Raymond also maintained a 401K retirement plan administered by BP Corporation of North America, Inc. Cline Decl. ¶ 1. BP employs Fidelity Employer Services Company, LLC ("Fidelity") to review domestic relations orders to determine if they qualify as "Qualified Domestic Relations Orders" under ERISA. Cline SOF Ex. 13 at 1.

On September 26, 2002, the Klickitat County Superior Court entered a Decree of Dissolution ("the Divorce Decree") terminating

ORDER ON SUMMARY JUDGMENT- 2

Raymond's marriage to Ms. Valentine.  Cline SOF Ex. 4.  The Decree of
Dissolution awarded Raymond, among other property, "All Insurance
Policies upon husband's life subject to his obligation to keep and
maintain the same and naming Petitioner Wife for the use and benefit
of herself and the children in the full amount of not less than
$500,000."  *Id.* Ex. 2.  The Decree of Dissolution awarded Ms.
Valentine, among other property, "½ of 401(k) standing in the name of
Respondent Husband divided as at [sic] the date of the entry of this
Order."  *Id.*

On September 21, 2003, Raymond married Roxann Cline.  Cline SOF
Ex. 5.  Shortly thereafter, he designated Ms. Cline as the beneficiary
of his 401K plan.  Cline Decl. ¶ 6.  It appears that Raymond also made
some attempt to designate Ms. Cline as the beneficiary of his life
insurance policy.  *See* Cline SOF Exs. 6-7.  However, MetLife never
received the documentation necessary to make this change.  Cline Decl.
¶¶ 21-23.  In December of 2004, Raymond declared, "I have delivered
paperwork to my attorney so that the necessary steps may be completed
to have one-half of my 401K awarded to [Ms. Valentine]."  Declaration
of Travis W. Misfeldt, January 8, 2007 ("Misfeldt Decl.") Exs. A-B.

Raymond passed away on December 15, 2004.  Cline SOF Ex. 8.  At
the time of his death, Raymond's life insurance policy was valued at
$660,000.  Valentine Decl. Ex. C.  MetLife contacted Ms. Valentine by
letter on January 3, 2005, and estimated that she would receive the
entire death benefit.  *Id.*  Ms. Valentine and Ms. Cline both submitted
claims for the proceeds of the Policy.  Cline Decl. ¶ 13.  After
reviewing the claims, MetLife determined that the claims "are adverse

ORDER ON SUMMARY JUDGMENT- 3

to one another and raise questions of fact and law that cannot be resolved by MetLife without exposing it to the danger of double liability." Cline SOF Ex. 11. MetLife advised the parties that an interpleader action would follow. *Id*.

In March of 2005, Ms. Valentine's attorney, Julie Vance, advised Fidelity of Ms. Valentine's claim to one-half of the 401K proceeds. Misfeldt Decl. ¶ 5, Ex. E. Ms. Vance also made contact with the attorney representing Ms. Cline in her capacity as the personal representative of Raymond's estate. Ms. Cline's counsel indicated that, once certain procedures were completed, "we should be able to satisfy Mr. Cline's obligation to your client, with respect to the 401K." Misfeldt Decl. Ex. C.

Sometime prior to August 17, 2005, Fidelity distributed the 401K benefits to Ms. Cline in their entirety. Cline Decl. ¶ 19; Valentine Decl. ¶ 13, Misfeldt Decl. ¶ 5. Travis Misfeldt, Ms. Valentine's current attorney, contacted Fidelity and again raised the issue of Ms. Valentine's entitlement to half of the 401K proceeds. *Id*. ¶ 6. Fidelity maintained that it had no obligation to Ms. Valentine. *Id*. Exs. F-G.

After MetLife instituted the present interpleader action, Ms. Valentine brought cross-claims against Ms. Cline and Fidelity seeking to recover 50% of the 401K's value, as of September 26, 2002. (Ct. Rec. 9.) On January 8, 2007, Fidelity filed a motion to dismiss Ms. Valentine's third party claim. The Court subsequently granted this motion on the grounds that Ms. Valentine failed to exhaust her administrative remedies prior to bringing her claim against Fidelity.

ORDER ON SUMMARY JUDGMENT- 4

(Ct. Rec. 89).

**DISCUSSION**

**I.    SUBJECT MATTER JURISDICTION**

The disposition of the disputed funds is governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1002(1) *et seq*. The federal district courts have exclusive jurisdiction over ERISA actions.  29 U.S.C. § 1132(e)(1).  This action also presents a federal question, giving the Court jurisdiction under 42 U.S.C. § 1331.

**II.   LIFE INSURANCE PROCEEDS**

The Employee Retirement Income Security Act ("ERISA") governs the administration of employee benefit and pension plans.  29 U.S.C. § 1001 *et seq*.  Under this statute, a benefit plan must have at least one fiduciary responsible for administering the plan.  29 U.S.C. § 1102(a)(1).  The fiduciary is charged with making payments to the beneficiary "in accordance with the documents and instruments governing the plan."  *Metropolitan Life Ins. Co. v. Parker*, 436 F.3d 1109, 1113 (9th Cir. 2006)(quoting 29 U.S.C. § 1104(a)(1)(D)).  When a court is called upon to determine the proper distribution of a benefit plan's proceeds, the court should determine whether the employee who participated in the plan ("the participant") unambiguously designated a beneficiary.  If no such designation was made, the court should determine whether the plan provides a default beneficiary.  *Id.* at 1114 (citing 29 U.S.C. § 1002(8)).

The interpretation of insurance policies under ERISA is governed by the federal common law of contract interpretation.  *Allen v. Honeywell Ret. Earnings Plan*, 382 F. Supp. 2d 1139, 1162 (D. Ariz.

ORDER ON SUMMARY JUDGMENT- 5

2005).  Applying the federal common law, courts should interpret terms "in an ordinary and popular sense as would a person of average intelligence and experience."  *Padfield v. AIG Life Ins. Co.*, 290 F.3d 1121, 1125 (9th Cir. 2002).  Language is plain and unambiguous when all alternative readings may be excluded as unreasonable.  *McDaniel v. Chevron Corp.*, 203 F.3d 1099, 1110 (9th Cir. 2000).  Whether an ambiguity exists is a question of law.  *Id.* at 1111.

The Court finds that the language of the designation form is plain and unambiguous.  The designation form's reference to $432,000 serves as a clarification of the policy's value at the time of the designation.  Ms. Cline has argued that a second interpretation is possible; namely, the language "or $432,000" may be interpreted as a limitation on Ms. Valentine's entitlement.  However, this interpretation assumes that Raymond, at the time that he designated his wife as the sole beneficiary of his life insurance policy, intended for his wife to receive 100% of the policy's proceeds as long as it was valued at $432,0000, but for an unidentified third party to receive a portion of the proceeds if they grew to $432,000.01.  As Ms. Valentine has argued, Raymond was no doubt aware that the policy would necessarily grow over time.  His failure to designate a second person as beneficiary of the funds in excess of $432,00 speaks for itself.  Ms. Cline's proffered interpretation of the designation form must be excluded as unreasonable.

Raymond having unambiguously designated Ms. Valentine as the Policy's beneficiary, she is entitled to 100% of the Policy's benefits.

ORDER ON SUMMARY JUDGMENT- 6

**IV.  401K**

Ms. Valentine seeks to impose a constructive trust on the 401K proceeds in Ms. Cline's possession.  In evaluating this claim, the Court must first determine whether constructive trusts, as equitable remedies imposed under state law, are preempted by ERISA.  If this remedy remains available to Ms. Valentine, the Court will then determine whether the imposition of a constructive trust is warranted by the facts of this case.

**A.    Does ERISA Preempt Washington's Constructive Trust Law?**

ERISA expressly provides that it "shall supercede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan."  29 U.S.C. § 1144(a).  The goals underlying this "clearly expansive" preemption include the promotion of "nationally uniform plan administration" and "minimizing the administrative and financial burdens on administrators."  *Egelhoff v. Egelhoff*, 532 U.S. 141, 146-148, 121 S. Ct. 1322, 1327-1328, 149 L. Ed. 2d 264, 271-273 (2001)(citing *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 9, 107 S. Ct. 2211, 2217, 96 L. Ed. 2d 1, 11 (1987)).

Taking these principles into account, binding and well-reasoned authorities have nevertheless concluded that ERISA does not preempt the imposition of a constructive trust on plan benefits once they have been distributed.  The Ninth Circuit reached this conclusion in *Emard v. Hughes Aircraft Co.*, 153 F.3d 949, 955 (9th Cir. 1998).  While neither party to the present action has cited *Emard*, they presumably omitted this authority because the Supreme Court overruled *Emard* on

other grounds in *Egelhoff*.[1]  The Ninth Circuit has implied, however,

that *Egelhoff* is limited to the secondary holding of *Emard*.  *See*

*Metro. Life Ins. Co. v. Buechler*, 19 F. App'x 678, No. 00-35374, at

679 (9th Cir. 2001)(explaining that *Egelhoff* overruled *Emard* "to the

extent that *Emard* held that ERISA does not preempt state laws that

require an employee welfare plan to pay life insurance proceeds to

someone other than the named beneficiary").  *See also TCI Group Life*

*Ins. Plan v. Knoebber*, 244 F.3d 691, 700 (9th Cir. 2001)(stating,

"Whether *Emard's* reasoning survives the Supreme Court's recent

decision in *Egelhoff v. Egelhoff* [. . .] is a question that we leave

to the district court to decide in the first instance.")

Moreover, the Supreme Court's reasoning in *Egelhoff* suggests that

ERISA does not bar the imposition of constructive trusts on benefits

that have already been distributed in accordance with ERISA.  The

Washington law at issue in *Egelhoff* "implicat[ed] an area of core

ERISA concern" in that it required plan administrators to consider a

set of statutory rules, rather than the plan documents, in

distributing plan benefits.  532 U.S. at 147-148, 121 S. Ct. at 1327-

28, 149 L. Ed. 2d at 271-272.  Consequently, the law interfered with

uniform plan administration by subjecting administrators to different

legal obligations in different states.  *Id.* at 148, 121 S. Ct. at

1328, 149 L. Ed. 2d at 272.  State constructive trust law, on the

---

[1]In *Egelhoff*, the Supreme Court held that ERISA preempted a
Washington statute that invalidated spousal beneficiary
designations upon divorce.  532 U.S. at 143, 121 S. Ct. at 1325,
149 L. Ed. 2d at 269.  This overruled the second section of the
*Emard* opinion where the Ninth Circuit held that ERISA did not
preempt the statute in question.

ORDER ON SUMMARY JUDGMENT- 8

other hand, is comparable to so-called "slayer statutes," in that, as creatures of common law equity, constructive trusts have "a long historical pedigree" and may very well be "more or less uniform nationwide."  Such state laws, the *Egelhoff* Court implied, are not preempted by ERISA.

Well-reasoned opinions of both the Sixth and the Tenth Circuits have likewise held that ERISA does not preempt the imposition of a constructive trust on benefits after their distribution.  *Central States, Southeast & Southwest Areas Pension Fund v. Howell*, 227 F.3d 672, 678-679 (6th Cir. 2000); *Guidry v. Sheet Metal Workers Nat. Pension Fund*, 39 F.3d 1078, 1086 (10th Cir. 1994)(en banc).  In reaching this conclusion, the *Howell* and *Guidry* courts relied upon the Supreme Court's decision in *Mackey v. Lanier Collection Agency and Serv., Inc.*, in which the Supreme Court held that ERISA did not prevent state courts from subjecting ERISA benefits to garnishment proceedings.  486 U.S. 825, 831-2, 108 S. Ct. 2182, 2186, 100 L. Ed. 2d 836, 845 (1988).  In another opinion, the Supreme Court observed, "We see no meaningful distinction between a writ of garnishment and the constructive trust remedy imposed in this case."  *Guidry v. Sheet Metal Workers Nat'l Pension Fund*, 493 U.S. 365, 372, 110 S. Ct. 680, 685, 107 L. Ed. 2d 782, 792 (1990).  This dicta suggests that the Supreme Court may also be in accord with the principle established by *Emard*, *Guidry*, and *Howell*.

Accordingly, the Court holds that ERISA does not preempt the imposition of a constructive trust on plan benefits following their distribution to the beneficiary.

ORDER ON SUMMARY JUDGMENT- 9

**B.    Is the Imposition of a Constructive Trust Appropriate?**

A constructive trust arises when "a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it." *Brooke v. Robinson*, 125 Wn. App. 253, 257, 104 P.3d 674, 677 (Wash. Ct. App. 2004) (internal citations and quotation marks omitted). Unjust enrichment occurs when,

> 1) One party confers a benefit upon the other;

> 2) The receiving party has an appreciation or knowledge of the benefit; and

> 3) The receiving party retains the benefit under circumstances that make it unjust for him or her to do so.

*Dragt v. Dragt/DeTray*, *L.L.C.*, 161 P.3d 473 (Wash. Ct. App. July 3, 2007)(citing *Bailie Commc'ns, Ltd. v. Trend Bus. Sys., Inc.*, 61 Wn. App. 151, 159-60, 810 P.2d 12, 17-18 (1991)). The enrichment must be unjust "both under the circumstances and as between the two parties to the transaction." *Farwest Steel Corp. v. Mainline Metal Works, Inc.*, 48 Wn. App. 719, 732, 741 P.2d 58, 64-64 (1987)). Consequently, unjust enrichment does not occur when the party receiving the benefit was merely an "incidental beneficiary of the transaction." *Bort v. Parker*, 110 Wn. App. 561, 580, 42 P.3d 980, 991 (Wash. Ct. App. 2002).

The imposition of a constructive trust is appropriate in this case because Ms. Cline has been unjustly enriched by retaining the entirety of the 401K proceeds. Ms. Cline does not dispute that she both received a benefit, the 401K, and that she was aware of having received the benefit. The evidence before the Court further establishes that Raymond promised, through the Divorce Decree, to give

ORDER ON SUMMARY JUDGMENT- 10

Ms. Valentine one-half of his 401K, as valued at the time of the decree, and that Raymond began taking the steps necessary to fulfill this promise in 2004.  Misfeldt Decl. Ex. C; Valentine Decl. ¶ 13.

If Ms. Cline had been unaware of Raymond's intent concerning the 401K, she would be an incidental beneficiary of his failure to transfer the 401K and a constructive trust would be inappropriate. However, the evidence before the Court indicates that Ms. Cline was aware of Raymond's promises to give Ms. Valentine one-half of the 401K.  In fact, Ms. Cline's own attorney was attempting to carry out Raymond's wishes regarding the 401K in March of 2005.  In retaining between $50,000 and $100,000 with knowledge that her late husband intended these funds for the use of his ex-wife and four children, Ms. Cline has done more than fail to carry out her husband's wishes.  She has also reneged on an implicit promise that she herself made, through counsel, to honor the requirements of the Divorce Decree.  Misfeldt Decl. Ex. C.

Finally, the Court is not persuaded by Ms. Cline's argument that Ms. Valentine has an adequate remedy at law.  Ms. Valentine's declaration establishes that she did not have the benefit of traditional legal representation at the time of her divorce, making a suit for malpractice impractical.  Furthermore, an action against Raymond's estate in state court could quickly return to this Court through the removal process based on the preemptive effects of ERISA. The imposition of a constructive trust in favor of Ms. Valentine is therefore appropriate.

**III. CONCLUSION**

ORDER ON SUMMARY JUDGMENT- 11

As the sole beneficiary of MetLife's Group Universal Life Insurance Policy No. 95520, Ms. Valentine is entitled to 100% of the Policy's proceeds and the interpleaded funds should be distributed to her.  Ms. Valentine is also entitled to one-half of the 401K, as valued on September 26, 2002.  The current record does not indicate what the value of the 401K was on the date in question.  As a result, the Court is unable to specify the amount to which Ms. Valentine is entitled.  Accordingly, this matter must proceed to trial[2] on the sole issue of the 401K's value on September 26, 2002.  The Court being fully advised,

**IT IS HEREBY ORDERED:**

1. Roxann Cline's Motion for Summary Judgment, **Ct. Rec. 36**, is **DENIED.**

2. Teresa Valentine's Motion for Summary Judgment, **Ct. Rec. 41**, is **GRANTED.**

3. A telephonic scheduling conference will be held on **October 16, 2007** at **1:30 p.m.**  Counsel shall call the Court's conference line at 509-458-6382.

4. On or before October 9, the parties shall file a Joint Status Certificate outlining the issues set forth below.

    a. What motions are anticipated?

    b. Are any special procedures needed, such as reference to a special master, a magistrate, arbitration, or to

---

[2]If the parties were to reach a stipulation concerning the value of the 401K on the relevant date, a trial would be unnecessary.  In that circumstance, the Court could enter judgment forthwith.

ORDER ON SUMMARY JUDGMENT- 12

1    the Judicial Panel on Multi-district Litigation, or application

2    for Manual for Complex Litigation?

3         c. Are any modifications to the standard pretrial

4    procedures needed because of simplicity or complexity of this

5    case?

6         d. Should this case be bifurcated? Or are there other

7    issues regarding the structuring sequence of the trial?

8         e. What are the prospects for settlement?

9         f. Are there any other matters to discuss that may insure

10   the effective resolution of this case?

11   **IT IS SO ORDERED.**  The District Court Executive is hereby

12   directed to enter this order and furnish copies to counsel.

13   **DATED** this  26th  day of September, 2007.


                           s/ Fred Van Sickle
                           Fred Van Sickle
                           United States District Judge

ORDER ON SUMMARY JUDGMENT- 13